UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

AKO K. BURRELL,

                     plaintiff,

      vs.

Charlie Durkin (Lieutenant of CCF),
King (Sergeant of CCF),
D. Lashway (Correctional Officer of CCF),
Janquish (Correctional Officer of CCF),
John Doe 1 (Inmate of CCF),
John Doe 2 (Inmate of CCF),
John Doe 3 (Inmate of CCF),
John Doe 4 (Inmate of CCF),
Devins (Correctional Officer of CCF),
Ashline (Correctional Officer of CCF),
Mary Beth (Nurse of CCF),
LeClaire (Captain of CCF),
Beane (Correctional Officer of CCF),
J. Buskey (Correctional Officer of CCF),
Fitzgerald (Correctional Officer of CCF),
Kelly (Correctional Officer of CCF),
Emerson (Sergeant of CCF),
Stewart (Correctional Officer of CCF),
Owens (Sergeant of CCF),
Lemoy (Correctional Officer of CCF),
Frenya (Dep. Sup. of Security of CCF),

                     defendant(s).

Civil Index:: 9:22-cv-102



---

      Plaintiff, Ako K. Burrell, is acting "pro se" in this 1983 Civil Action. and is of no law

firm herein, and plaintiff is an African-American citizen of the United States of America, and as

for his complaint herein alleges the following:

### I. Jurisdiction & Venue

1.)    This is a civil action authorized by 42 USC § 1983, to redress the deprivation, under the color of law of the rights secured by the US Constitution of the United States. This Court has jurisdiction under 28 USC §§ 1331, 1343(A)(3). Plaintiff Burrell seeks declaratory relief pursuant to 28 USC §§ 2201, 2202. Plaintiff Burrell's claim for injunctive relief are authorized by 28 USC §§ 2283, 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2.)    The Northern District of New York is an appropriate venue under 28 USC § 1391(b)(2) because it is where the events giving rise to this claim occurred.

3.)    Plaintiff Ako Burrell, was at all times mentioned herein, a prisoner in the custody of New York State Department of Correctional Services and Community Supervision, (hereinafter NYSDOCCS), at the Clinton Correctional Facility, (hereinafter CCF), located at PO Box 2001, Dannemora, NY 12929.

### II. Defendant's Herein:

4.)    New York State, NYSDOCCS, and CCF are responsible for the welfare of all inmates of that prison.

5.)    Defendant Charlie Durkin, is the Lieutenant of the CCF, employed by NYSDOCCS. He is legally responsible for the operations of CCF, and for the welfare of all inmates of that facility.

6.)    Defendant King, a Sergeant at CCF, employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of Sergeant and was assigned to CCF.

7.)    Defendant D. Lashway, is a correctional officer employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of correctional officer (hereinafter CO) and was assigned to CCF.

8.)     Defendant Janquish, is a CO employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of CO and was assigned to CCF.

9.)     Defendant John Doe 1, is an inmate incarcerated by NYSDOCCS, housed at the CCF, and was assigned a job as porter at the CCF, who at all times mentioned in this complaint held the rank of Lower-F Porter, and was assigned to CCF.

10.)    Defendant John Doe 2, is an inmate incarcerated by NYSDOCCS, housed at the CCF, and was assigned a job as porter at the CCF, who at all times mentioned in this complaint held the rank of Lower-F Porter, and was assigned to CCF.

11.)    Defendant John Doe 3, is an inmate incarcerated by NYSDOCCS, housed at the CCF, and was assigned a job as porter at the CCF, who at all times mentioned in this complaint held the rank of Lower-F Porter, and was assigned to CCF.

12.)    Defendant John Doe 4, is an inmate incarcerated by NYSDOCCS, housed at the CCF, and was assigned a job as porter at the CCF, who at all times mentioned in this complaint held the rank of Lower-F Porter, and was assigned to CCF.

13.)    Defendant Devins, is a CO employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of CO and was assigned to CCF.

14.)    Defendant Ashline, is a CO employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of CO and was assigned to CCF.

15.)    Defendant J. Buskey, is a CO employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of CO and was assigned to CCF.

16.)    Defendant Beane, is a CO employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of CO and was assigned to CCF.

17.)    Defendant LeClaire, is a Captain employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of Captain and was assigned to the CCF.

18.)    Defendant Fitzgerald, is a CO employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of CO and was assigned to CCF.

19.)    Defendant Mary Beth, is a nurse employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of nurse and was assigned to CCF.

20.)    Defendant J. Stewart, is a CO employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of CO and was assigned to CCF.

21.)    Defendant Emerson, is a Sergeant employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of CO and was assigned to CCF.

22.)    Defendant Kelly, is a CO employed by NYSDOCCS, who at all times mentioned herein this complaint, held the rank of CO and was assigned to CCF.

23.)    Defendant Owens, is a Sergeant employed by NYSDOCCS, who at all times mentioned herein this complaint held the rank of Sergeant and was assigned to CCF.

24.)    Defendant Frenya, is a Deputy Superintendent of Security, employed by NYSDOCCS, who at all times mentioned herein this complaint held the rank of Deputy Superintendent of Security, employed and assigned to CCF.

26.)    Defendants each herein is sued individually and in his or her official capacity, at all times mentioned in this complaint, each defendant acted under the color of law of New York State.

27.)    At all times relevant to this case, plaintiff Burrell was an inmate at the CCF, and at all times relevant to this complaint, plaintiff Burrell was a prisoner.

### III. Statement of Claim

28.) On September 21, 2021, Defendant Kelly was an escort officer, assigned to retrieve plaintiff from D-Block/4-gallery/37-cell. On or about 9:45 a.m., Kelly retrieved plaintiff from the recreation yard (keeplock area). Defendant Kelly applied restraints to plaintiff, and stated "You got any contraband on you?" Plaintiff stated "No sir, I do not." Kelly stated, "Well, we will soon find out, won't we."

29.) As plaintiff exited the rec area and got by a door, Kelly forced plaintiff into a wall and said "Well, let me see, you seem suspect, you look like a Blood [gang member]." He then began patting plaintiff down and pulled the waistband to plaintiff's pants and boxer brief and inserted his hand between plaintiff's buttocks and using his index finger to inspect my anal crack.

30.) On the same date, after the search, plaintiff was escorted to the D-Block unit to retrieve defense paperwork pertinent to his Tier III hearing. Once retrieved, plaintiff was escorted to the Tier Office.

31.) Once at the Tier Office, plaintiff informed Charlie Durkin (defendant), of Defendant Kelly's pat frisk and asked "Is that procedure?" Defendant Durkin became irate and told plaintiff he was "delusional" and "a liar," and needs to be brought to "suicide watch."

32.) Defendant Durkin then brought plaintiff to medical to report Kelly's sexual assault, and then to the mental health office. Plaintiff informed the mental health counselor he felt "violated," and "less than a man," but he was "not suicidal." The counselor then informed Defendant Durkin to bring plaintiff back to his cell.

33.) On October 5, 2021, I was escorted to the Tier Office of CCF. I was met by Defendant Charlie Durkin and a John Doe Corrections Officer. It was about 9:00 a.m., I sat on a bench and started sorting out my defense documents from a folder I carried.

34.) I held Directive 4910a in my hands and was reviewing this document to prepare a defense for a loss/damage property misbehavior report (hereinafter MB) I received on 10/04/21, by a CO Allen that alleged I had no razor in my cell during a search.

36.) Defendant Durkin was ordering the John Doe CO, who is a Tier Hearing Officer, to "Find somebody to do the hearing on the motherfucker Burrell." The John Doe CO began making phone calls to find a CCF staff member who was in position of authority, in the jurisdiction of Directive 4932, to conduct a Tier II hearing, for a MB report written by Defendant Durkin.

37.) The John Doe CO informed Defendant Durkin "Nobody is picking up, I'm gonna go find somebody, this is crazy, this piece of shit is not getting off." Defendant Durkin then began to inform the John Doe CO, "It doesn't matter who does the hearing, I wrote the nigger up, he's getting the max anyways, 30 days keeplock and loss of every fucking privilege he has. The thing is, it has to be done today, it's his 14th day." Defendant Durkin then began to use his radio to contact Captain Cragle, he stated "Unit 10 to Captain."

38.) I remained on the bench of the tier office quietly waiting for my tier hearing to begin. Defendant Durkin approached me and assaulted me with a slap to my face as he snatched the Directive 4910a out of my hands. He then reached behind me a groped my right buttocks causing pain and snatched my folder with remaining documents. I was overridden with fear and anxiety and could not breathe. I asked "I need medical, I can't breathe, I'm having chest pains." Defendant Durkin replied "Shut the fuck up, you are not getting shit, die you piece of shit." I kept repeating that "I'm having chest pains."

39.) Defendant Durkin then informed the John Doe CO "Write and get an extension for his Tier II and his Tier III, okay," then stated to me "Okay, you motherfucker, you're going to the unit [Special Housing Unit 14]." I then informed Defendant I wanted to report a PREA sexual assault against him for the forceful touching of my buttocks and slapping me. He then said "Okay, I'll contact Dep. Sweeney (PREA Deputy of CCF), but you're really going to the unit."

40.) Defendant King arrived with Defendant D. Lashway and Defendant Lashway informed Sgt. King "This motherfucker is going to the unit for claiming PREA against me and chest pains." Sgt. King then stated "okay, let's move the piece of shit." Defendant Durkin ordered John Doe CO to "Get the fucking stretcher and get me four inmates from Lower-F."

41.) About five minutes later, four LF inmates, who has no medical training or experience on carrying inmates or humans on stretchers, came under the direction of Defendant Durkin, King and a John Doe (Lower-F A-man).

42.) Defendant Durkin then stated to his subordinates "Get that motherfucker on the stretcher." I objected in protest, I stated "I am fully capable of walking, I do not need a stretcher to walk to medical, please these inmates may drop me, I am heavy. They have no training, this is grossly negligent of my well being."

43.) At that moment, Defendant Janquish grabbed me by the shoulder and thigh of my right body. I jumped back fearful and stated "Why are you grabbing me?" He stated "You're getting on the stretcher, I'm trying to help you." I asked Defendant Durkin and Sgt. King "Am I being given a direct order to get on this stretcher?" (A direct order is 106.10, a rule regulation that could result in a MB report as a prison infraction). These defendants stated "Yes, so get the fuck on the stretcher." I again objected and stated "Okay, but please allow CCF staff to carry me, not these untrained and inexperienced inmates. They will drop me and injure me, this is gross

negligence of my safety." Then Defendant Durkin stated "Shut the fuck up, they're carrying
you."

44.) I then, got on the stretcher, due to fear of being written a report for refusing a direct order,
and physical assault from the defendants. Once on the stretcher, Defendant D. Lashway secured
my upper body with fasteners, but not tight enough to secure my person, and prevent me from
falling. Defendant Janquish then secured my legs in the same fashion. Defendants Durkin and
Sgt. King in unison stated "Okay, take him out."

45.) The caravan of officers, Defendants King, D. Lashway, and Janquish followed behind the
four LF inmates. We arrived at the East Wing staircase and I was dropped by the inmates. My
lower body hitting the ground from being carried 5 feet high, I immediately felt a sharp pain dart
into my lower back, causing me to arch up. Then my left calf began to throb and my right foot
started throbbing. I tried to exercise my toes through my boots, but could not move my toes at all,
the pain was unbearable. Defendant Sgt. King stated, "Okay, pick him up, take him up the stairs."
He ordered (via a radio call) to have a gurney brought to the top of the East Wing staircase.

46.) I began to beg Sgt. King "Please, don't allow these inmates to bring me up the stairs.
Please let me walk. I already feel injured please. They might drop me again." Sgt. King ignored
my cries and D. Lashway told the porters, "Up with him!" I was carried up the stairs, once up the
first flight of steps, we arrived at a landing where the upper body fastening strap, placed
negligently by D. Lashway, broke and my upper body flew off the stretcher and my head hit a
pipe-like railing that divided the staircase. I lost consciousness and I only remember awaking in
the medical room. I vaguely recall D. Lashway placing me back on the stretcher and I went to
speak , but he placed his forearm and elbow on my throat and stated "Shut up, pussy," and I
again lost consciousness.

47.) Once at medical, I was treated for chest pains and anxiety. I told the nurse about my fall from the stretcher, and he stated "They said you had chest pains. Write a sick call for anything else, you always got a PREA complaint or some bullshit game, not today, fuck off."

48.) Sgt. King then chimed in, "Yeah, fuck your injuries. So what you banged your head a little bit, big deal. Write a sick call, I'm not entertaining your shit." I thought I was going to die. I gave up on life, and stated, "I really want to die. At this moment, I want to die. Kill me, fuck it, or I'll kill myself." I was emotionally distraught. I was brought to the mental health on the third floor. Defendant D. Lashway kept touching me and stating "Kill yourself, go ahead, do it, do it," I asked him to "Stop touching me."

49.) I was brought into the OMH admission room and restrained by D. Lashway, Devins, and Ashline. These officers, under D. Lashway instructions, started to strip me. D. Lashway said, "This prick said he's gonna kill himself, we might as well check his prison purse (anal area) for contraband."

50.) CO Devins and Ashline stated, "Hey, this is our area and our playground. This is policy, you've been through this before, so just go along." They then pulled down my pants and D. Lashway spread my buttocks and noticed blood from Defendant Durkin's assault and stated "Oh, he's got something. That blood is from something," then entered my rectum and moved his finger around. I begged, "Please stop, you're hurting me." Once the OMH staff arrived, he removed his hand.

51.) I was interviewed by OMH and the nurse Mary Beth stated, "You're not getting medical treatment. Maybe if you stop with all your PREA's we will help you." She rubbed a swollen knot on my head and stated "Oh, a little bump, you'll be fine." I was denied admission to be observed

for suicide prevention and I was admitted to Unit-14 by Sgt. Liberty, and brought to 1-company/7-cell.

52.) I filed a grievance to Inmate Grievance Ms. Gregory and Superintendent McIntosh. I then wrote a sickcall for my injuries. On 10-06-21, I received no medical attention and I informed the nurse of my injuries. She took my sickcall and said "Okay." I received a Tier III report from Defendant Durkin for laughing on the bench, having chest pains, and making a PREA claim. I received a phone call, I informed my brother Trimard Campbell (see Exhibit A), who spoke to a Lt. Powell about my injuries and incident.

53.) On 10-07-21, at approximately 10:00 - 11:00 a.m., I asked for medical assistance and was told "Okay." While in my cell, suffering in pain, Officer D. Lashway appeared and stated "Hey Burrell, how's your ass? I'm doing your tier assistance. For a Tier III, you received on 10-05-21, by Lt. Durkin. Lt. Durkin wanted you to know, either plead guilty or die fighting this." I was paralyzed with fear and I notified the First Deputy Bradford of what happened, and that I no longer felt safe in the SHU, and was in danger of an assault influenced by Defendant Durkin.

54.) On 10-11-21, I was awoken to CO Ashline kicking my cell door and laughing. He then stated, "Watch me wet your shit, especially your kufi, you Muslim head-wrap, piece of shit." He then went behind my cell where my property was located and he opened my bags and soaked all my property with the mop water residue left by the inmate porter who was mopping.

55.) At around 10:00-10:45 a.m., CO Devins announced "chow" lunch and a CO Fitzgerald used his body to block the feed-up slot, and the visual for the camera, then CO Ashline pretended to offer me a tray. I was never given the tray. CO Devins laughed and CO Fitzgerald stated "Hey man, they're running the show." Defendant Ashline then stated "Hey, we will try again tomorrow, this is how this program works. Drop those PREA's and you probably can get fed." I

was not able to take my mental health medications, due to having no food. I take Remrod for a mental health disorder, and it requires that I eat prior to.

56.) On 10-12-21, I was released from the OBS unit, and brought back to the Special Housing Unit (1-company/7-cell), awaiting pending the MB report written by Defendant Durkin. On 10-18-21, Defendant LeClaire commenced plaintiff's Tier III hearing for the charges authored by Defendant Durkin (see Exhibit B) - 104.12, 104.13, 107.11, 107.20, 106.10 -Defendant Durkin adjourned this matter to obtain confidential mental health testimony.

57.) On October 28, 2021, Defendant LeClaire reconvened the hearing, and audio/video evidence was produced that was exculpatory, and plaintiff's testimony stated such. As well as the PREA, that was made note of by the PREA Deputy of CCF, Amy Sweeney, who notified a dismissal was required, due to plaintiff having a right to report a PREA, and not receiving a reprimand.

58.) On October 28, 2021, Defendant LeClaire found plaintiff guilty of charges and imposed the following sanctions in an arbitrary and capricious decision against all the policy requirements of dismissal (e.g., Dir. 4932; 251-5.1 Timeliness) ("Hearing must be completed within 14 days"; 251-3.1(b)... each employee shall endorse his or her name."; PREA(5)). These sanctions were as stated in (Exhibit B); SHU pre-hearing 10 days; loss of packages; loss of commissary; and loss of phones, each 90 days starting on February 21, 2022 - April 22, 2022. The plaintiff filed an appeal on the grounds stated in the previous paragraph stated in the complaint.

59.) On October 15, 2021, the CCF Facility Operating Manual Procedure (Hereinafter FOMP), required that plaintiff be provided with long underwear (2 sets). Defendants J. Buskey and Owens informed plaintiff "You filed a lawsuit on me [J. Buskey], and filed a PREA claim on Sgt. Mason, and now Charlie [Defendant Durkin], you can freeze your balls off prick, you are not

getting shit." These Defendants (Owens and Buskey), refused to allow plaintiff to possess his thermals/long underwear in retaliation to plaintiff providing legal assistance to inmate Harris in a 1983 civil suit. ~~(See Exhibit ___ )~~.

60.) Plaintiff was forced to be housed in the SHU. Defendant CO Lemoy turned on the fans and opened windows. Plaintiff filed grievances and Lemoy informed him "Keep writing, I don't give a fuck, you are a rat piece of shit, Owens and Durkin said freeze you out, so guess what, hold it down."

61.) Plaintiff contracted a cold and wrote sickcall and was prescribed medications. On 10-09-21. From 10-15-21, plaintiff had to suffer from cold weather and going to recreation with no thermals for two hours, when he was entitled to have thermals, which would prevent plaintiff from contracting a cold due to the inclimate weather of the North Country. With one layer of clothing, of state-issued socks, t-shirt, pants, and a shirt, jacket that was riddled with holes.

62.) From October 5, 2021 until November 2, 2021, the plaintiff was throwing up blood and coughing up blood throughout the night, blood leaked from plaintiff's nose and left ear. Plaintiff was brought to the infirmary on November 2, 2021 and was housed there until November 17, 2021 under a false pretense of tuberculosis. None of his head injuries were answered.

63.) Plaintiff suffered from a constant chest pain and coughed up blood. This all happened from falling from the stretcher and suffering those injuries.

## Exhaustion of Administrative Remedies

64.) The Plaintiff's administrative remedies with respect to all claims and all defendants (see Exhibit C).

**Legal Cause of Action**

65.) The Defendant Lt. Charlie Durkin's instructions to have an extension for my Tier II and Tier III MB reports was a violation of my 5th Amendment Due Process Clause, a protected right to the United States Constitution.

66.) The Defendant Lt. Charlie Durkin's retaliation by filing a Tier III MB report against me for having chest pains and reporting a sexual assault, to suppress me, and cause me fear with a punitive sanction, was a violation of my 1st, 8th, and 14th Amendment protected rights to the United States Constitution.

67.) The Defendant Lt. Charlie Durkin's assault, slapping me in my face and groping my buttocks, taking my defense paperwork was a violation to my 5th, 8th and 14th Amendment protected right pursuant to the United States Constitution.

68.) The Defendant Lt. Charlie Durkin's ordering me to be carried on a stretcher by four untrained and inexperienced Lower-F inmate porters, or be written a MB report for refusing a direct order and risk being dropped and injured, he was being deliberately indifferent to my well-being, and caused me to be injured when I fell off the stretcher twice in the CCF East Wing staircase, and have several injuries as stated in complaint, was in retaliation of my PREA claim 1st, 8th, and 14th Amendment protected rights pursuant to the US Constitution.

69.) The Defendant Lt. Charlie Durkin's order to not allow me to possess my legal documents for a 10-13-21 deposition for a civil case (Burrell v. Maciol 9:19-cv-0/69) was a violation to my 6th Amendment access to the courts protected right, pursuant to the United States of America.

70.) The Defendant Lt. Charlie Durkin's order to CO Ashline and Devins to not feed me on 10-07-21 and 10-11-21, and not allow me to sleep by kicking my door and preventing me from inducing my mental health medication (Remrod), while housed in OBS, was a violation to my 8th Amendment protected right, pursuant to the United States Constitution.

71.) The Defendant Lt. Charlie Durkin's order to deny me medical attention for my injuries, by not reporting an unusual incident for me falling off the stretcher and suffering multiple body traumas, was a violation to my 8th Amendment protected right pursuant to the United States Constitution.

72.) The Defendant Lt. Charlie Durkin's order to Sgt. Owens and CO Lemoy to freeze me out by opening the windows and turning on the fans in the SHU-1-7 cell, to deny me thermals while the weather was freezing, was a violation of my 8th Amendment right, pursuant to the US Constitution.

73.) The Defendant D. Lashway's use of excessive force conducting a cavity search of plaintiff in the OMH, inserting his finger in the plaintiff's rectum, was a violation of plaintiff's 8th Amendment right pursuant to the US Constitution.

74.) The Defendant D. Lashway's impeding plaintiff's Superintendent's Hearing, by acting as plaintiff's tier assistance, and informing plaintiff "Lt. Durkin said, plead guilty or die," instead of litigating against the MB report, causing plaintiff to go to suicide watch due to fear of being killed, for five days, violated plaintiff's 1st, 5th, and 8th Amendment rights pursuant to the US Constitution.

75.) The Defendant D. Lashway's use of excessive force thrusting his elbow into plaintiff's throat while plaintiff was being escorted on the stretcher, and he subsequently fell after being dropped, was a violation of plaintiff's 1st and 8th Amendment violation, as this was a retaliatory

attack due to plaintiff reporting a PREA claim against Defendant Durkin. These rights were protected by the US Constitution.

76.) The Defendant Janquish's use of excessive force by forcefully placing plaintiff on the stretcher by untrained inmates and causing plaintiff to be injured, was a deliberate indifference to plaintiff's 8th Amendment right pursuant to the US Constitution.

77.) The Defendant Sgt. King's denial of a use of force report, medical attention, and forceful and moving order for plaintiff to be escorted on a stretcher by untrained inmates, his negligence caused plaintiff to be dropped by these inmates, and be injured. The Defendant refused to report the incident and told medical "He's not playing plaintiff's games, etc."

78.) The Defendants John Doe 1, John Doe 2, John Doe 3, and John Doe 4's carrying of plaintiff on a stretcher to medical, and dropping him twice, causing his injuries, due to their negligence in having any medical training, was a violation of plaintiff's 8th, and 14th Amendment rights pursuant to the US Constitution.

79.) The Defendant Devin's squeezing of plaintiff's testicles while he was being admitted to suicide watch causing his injuries was a violation of plaintiff's 8th Amendment rights to the US Constitution.

80.) The Defendants Devin, Ashline, and Fitzgerald's refusal to feed plaintiff while he was housed in OBS, under the orders of Defendant Lt. Durkin, was a violation of plaintiff's 1st, and 8th Amendment rights, due to them retaliating for plaintiff's PREA claim against Defendant Durkin. These rights are protected pursuant to the US Constitution.

81.) The Defendant Mary Beth's refusal to provide plaintiff medical services, and caused him to suffer from injuries for falling off the stretcher, was a deliberate indifference, and violated plaintiff's 8th Amendment right pursuant to the US Constitution.

82.) The Defendant J. Buskey and Sgt. Owen's refusal to provide plaintiff with thermals, causing him to be cold and not receive recreation due to the weather, was a deliberate indifference to plaintiff's 8th Amendment right pursuant to the US Constitution.

83.) The Defendant Beane's actions of destroying plaintiff's legal work that contained mitigating and exculpatory evidence to refute the disciplinary charges of Defendant Durkin's MB report., was a deliberate indifference to plaintiff's 1st, 6th, 8th, and 14th Amendment to the US Constitution.

### **Relief Requested**

WHEREFORE, plaintiff requests that the Court grant the following relief:

Award compensatory damages in the following amounts:

1.) $1,000,000.00 jointly and severally against defendants.

2.) Award punitive damages in the following amounts: $100,000.00 against each defendant.

Any for any such other relief as it may appear that plaintiff is entitled.

Date: _January 31_, 2022

Respectfully submitted,

Ako Burrell, #17B2994
Clinton Correctional Facility
PO Box 2001
Dannemora, NY 12929

# Exhibit



FORM 2171B (10/14)    STATE OF NEW YORK – DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

_____Clinton_____ Correctional Facility

# INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Burrell | 17B2994 | D-4-37 |

| 2. LOCATION OF INCIDENT ♦ LUGAR DEL INCIDENTE | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| Tier Office | 10/5/21 | 9 25 am |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN(ES)**

106.10 Direct order    107.20 False information
107.11 harassment    104.13 Create Disturbance
104.12 Demonstration

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

On the above date, Approx time and Location inmate Burrell was talking and laughing loudly on the bench. He was ordered to be Quiet. inmate refused. He became Louder and more boisterous. He started yelling he was sexually assaulted and wanted to claim prea. This was not true and inmate Burrell continued his Verbal complaints of Chest pain. Inmate Burrell has made this claim three times with this Lieutenant and proven to be False. This display and his continuous claims disrupts the entire Facility. This interferes with the normal operations of this entire Facility. Inmate uses these False events to harass & Demonstrate.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FIRMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 10/5/21 | C Durkin | C Durkin | |

**5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)    SIGNATURES:**

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)    FIRMAS: 1. _____

2. _____    3. _____

**NOTE: Fold back Page 2 on dotted line before completing below.**

DATE AND TIME SERVED UPON INMATE _10-6-21_  _9 05 Am_    NAME AND TITLE OF SERVER _____

FECHA HORA DADO AL RECLUSO    NOMBRE Y TÍTULO DEL QUE ENTREGA _____

You are hereby advised that no statement made by you in response to the charges or information derived therefrom may be used against you in a criminal proceeding. ♦ Por este medio se le informa que no se puede usar ninguna declaración hecha por usted como respuesta al cargo o la información derivada de ella en una demanda criminal.

## NOTICE ♦ AVISO

**REVIEWING OFFICER (DETACH BELOW FOR VIOLATION HEARING ONLY)**

You are hereby notified that the above report is a formal charge and will be considered and determined at a hearing to be held. ♦ Por este medio se le notifica que el informe anterior es un cargo formal que se considerará y determinará en una audiencia a celebrarse.

The inmate shall be permitted to call witnesses provided that so doing does not jeopardize institutional safety or correctional goals. ♦ Se le permitirá al recluso llamar testigos con tal de que al hacerlo no pondrá en peligro la seguridad de la institución o los objetivos del Departamento.

If restricted pending a hearing for this misbehavior report, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued prehearing confinement. ♦ Si está restringido pendiente a una audiencia por este informe de mal comportamiento, puede escribirle al Diputado del Superintendente para Seguridad o su representante antes de la audiencia para que haga una declaración acerca de la necesidad de continuar bajo confinamiento, previo a la audiencia.

Distribution: WHITE - Disciplinary Office    CANARY - Inmate (After review) ♦ Distribución: BLANCA - Oficina Disciplinaria    AMARILLA - Recluso (después de la resión)

# Exhibit



CLINTON GEN                          TAPE NUMBER _SD Cond #1 05'_
                                                              _(#1152a)_

DIN: 17B2994 NAME: BURRELL, AKO                LOCATION: SH-UU-007

INCIDENT DATE & TIME:        10/05/2021    09:25 AM    TIER 3

REVIEW DATE:                 10/05/2021           BY: LT   DONAH, J J

DELIVERY DATE & TIME:        10/06/21      09:05 AM BY: CO  TUCKER, C J

HEARING START DATE & TIME: _10/18/21_ _1:45 pm_ BY: _Capt LeClaire_

HEARING END DATE & TIME: _10/28/21_ _:30 pm_ BY: _Capt LeClaire_

WAS THERE NEED FOR A FORMAL MENTAL HEALTH/INTELLECTUAL CAPACITY ASSESSMENT? Y / N

| CHARGE NUMBER | DESCRIPTION OF CHARGES | REPORTED BY | DISPOSITION |
|---|---|---|---|
| 104.12 | DEMONSTRATION | LT  DURKIN, C E | Not Guilty |
| 104.13 | CREATING A DISTURBANCE | | Guilty |
| 107.11 | HARASSMENT | | Guilty |
| 107.20 | FALSE STATEMENTS OR INFO. | | Guilty |
| 106.10 | REFUSING DIRECT ORDER | | Guilty |

ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE
AMOUNT OF FIVE($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.
SANCTION DATES BELOW ARE SUBJECT TO REVIEW/CHANGE, AND WILL BE CONSECUTIVELY ADDED TO
ANY SIMILAR CURRENT SANCTION. IN ADDITION, WHENEVER A CONFINEMENT PENALTY IS BEING
SERVED AND A MORE RESTRICTIVE CONFINEMENT PENALTY IS IMPOSED AS A RESULT OF ANOTHER
HEARING, THE MORE RESTRICTIVE PENALTY SHALL BEGIN TO BE SERVED IMMEDIATELY, AND ANY
TIME OWED ON THE LESS RESTRICTIVE PENALTY SHALL BE SERVED AFTER COMPLETION OF THE
MORE RESTRICTIVE PENALTY PERIOD.

| PENALTY CODE | DESCRIPTION | PENALTY MO DAYS | START DATE | RELEASE DATE | SUSPEND MO DAYS | DEFERRED MO DAYS | RESTITUTION $$$$ . ¢¢ |
|---|---|---|---|---|---|---|---|
| A400 | SHU Re-Hearing | 10 | 10/5/21 | 10/14/21 | — | — | — |
| FCCO | Loss of Package | 90 | 2/21/22 | 4/22/22 | 30 | 180 | — |
| FCCO | Loss of Comm. | 90 | 2/21/22 | 4/22/22 | 30 | 180 | — |
| GCCO | Loss of Phones | 90 | 2/21/22 | 4/22/22 | 30 | 180 | — |

SUPERINTENDENT HEARING DISPOSITION RENDERED

DIN: 17B2994  NAME: BURRELL, AKO                HEARING DATE: 10/26/21

INCIDENT DATE: 10/05/2021          TIME: 09:25 AM      TIER: 3

A. STATEMENT OF EVIDENCE RELIED UPON:

① The Misbehavior report of LT. Durkin

② The Video evidence presented during the hearing

The above amounts to substantial evidence that you committed
the offenses you were found guilty of.

Case 9:22-cv-00102-BKS-ML   Document 1   Filed 02/03/22   Page 22 of 29

SUPERINTENDENT HEARING DISPOSITION RENDERED

DIN: 17B2994  NAME: BURRELL, AKO                    HEARING DATE: 10/28/21

INCIDENT DATE: 10/05/2021          TIME: 09:25 AM        TIER: 3

B. SPECIAL CONSIDERATIONS:

1. WHERE INMATE IS A JUVENILE, THE SANCTION HAS BEEN <u>MITIGATED</u> AS FOLLOWS:

N/A

2. IF AT ISSUE, HEARING OFFICER CONSIDERED INMATE'S MENTAL HEALTH AS FOLLOWS:

Confidential OMH testimony was obtained and Mr. Burrell was deemed able to continue with this hearing.

3. IF AT ISSUE, INMATE'S INTELLECTUAL CAPACITY/SPECIAL EDUCATION STATUS
   AS FOLLOWS:

N/A.

C. <u>ANY OTHER INDIVIDUAL MITIGATING OR AGGRAVATING CIRCUMSTANCES WERE CONSIDERED AS</u>
   <u>FOLLOWS</u>(include how they weigh in favor of a less severe or more severe sanction):

Mitigating: Remaining Cordial during the hearing and extensions, being pre-hearing housed to SHU.

Aggravating: The video evidence of manipulating Staff after a verbal confrontation.

Case 9:22-cv-00102-BKS-ML   Document 1   Filed 02/03/22   Page 23 of 29

## SUPERINTENDENT HEARING DISPOSITION RENDERED

DIN: 17B2994   NAME: BURRELL, AKO                    HEARING DATE: 10/06/21

INCIDENT DATE: 10/05/2021          TIME: 09:25 AM          TIER: 3

D. <u>OTHER REASONS FOR DISPOSITION:</u>

N/A

E. <u>SUPPLEMENTAL DATA ENTRY</u>

  1. IF INMATE FOUND GUILTY OF ASSAULT (100.10; 100.11; 100.12):
     WAS WEAPON USED?        __ (Y/N)   WHAT TYPE?    __
     DID AN INJURY OCCUR?    __ (Y/N)   SEVERITY (1-4)?  __

  2. IF INMATE FOUND GUILTY OF A SEX OFFENSE (101.10):
     CHOOSE ONE: _ FORCE/ATT FORCE      _ ENCOURAGE/SOLICIT    _ CONSENSUAL

  3. IF INMATE FOUND GUILTY OF THREATS (102.10):
     CHOOSE ONE: _ NON-VIOLENT          _ VIOLENT

  4. IF INMATE FOUND GUILTY OF VIOLENT CONDUCT (104.11):
     CHOOSE ONE: _ ASSAULT/ATT ASSAULT  _ THREAT OF VIOLENCE   _ ACT OF VIOLENCE

  5. IF INMATE FOUND GUILTY OF DEMONSTRATION (104.12):
     CHOOSE ONE: _ LEAD/ORGANIZED       _ PARTICIPATED

  6. IF INMATE FOUND GUILTY OF INTERFERENCE (107.10):
     CHOOSE ONE: _ PHYSICAL             _ VERBAL

  7. IF INMATE FOUND GUILTY OF DRUG POSSESSION (113.25)
     CHOOSE ONE: _ POSSESSION ONLY      _ MAKE/DISTRIBUTE/SELL/EXCHANGE

### SUPERINTENDENT HEARING DISPOSITION RENDERED

DIN: 17B2994  NAME: BURRELL, AKO                    HEARING DATE: 10/28/21

INCIDENT DATE: 10/05/2021          TIME: 09:25 AM      TIER: 3

F. HISTORY/CONFINEMENT SANCTION GUIDELINE REVIEW
------------------------------------------------------------------------

| CHARGE | DESCRIPTION OF CHARGES | 5 YEAR PRIORS | 10 YEAR PRIORS |
|--------|------------------------|---------------|----------------|
| 104.12 | DEMONSTRATION | 0 | 0 |
| 104.13 | CREATING A DISTURBANCE | 1 | 1 |
| 107.11 | HARASSMENT | 2 | 2 |
| 107.20 | FALSE STATEMENTS OR INFO. | 1 | 1 |
| 106.10 | REFUSING DIRECT ORDER | 6 | 6 |

AT THE TIME OF THE HEARING, WAS THIS INMATE HOUSED IN A SHU CELL: ✓ YES ___ NO
------------------------------------------------------------------------

✓ THE CONFINEMENT SANCTIONS IMPOSED ARE WITHIN THE PUBLISHED GUIDELINES

                            OR

___I HAVE IMPOSED CONFINEMENT SANCTIONS THAT HAVE DEPARTED UPWARD FROM THE
   PUBLISHED GUIDELINES, FOR THE FOLLOWING REASON(S)(choose up to three):

            ___ OVERALL CLIMATE OF THE FACILITY
            ___ SEVERITY OF OFFENSE
            ___ LOCATION OF OFFENSE
            ___ MANNER OFFENSE WAS COMMITTED
            ___ RISK TO SECURITY
            ___ RISK TO PERSONAL SAFETY
            ___ PROPERTY DAMAGE - RESTITUTION
            ___ DISCIPLINARY HISTORY
            ___ OTHER_____

   (ARTICULATE BELOW THE INMATE'S PARTICULAR HIGH RISK BEHAVIORS OR OTHER FACTORS
    INDICATING NEED FOR CONFINEMENT EXCEEDING THE GUIDELINES TO ADDRESS A
    THREAT TO THE SAFETY OF STAFF OR INMATES):

_____

_____

_____

_____

Case 9:22-cv-00102-BKS-ML   Document 1   Filed 02/03/22   Page 25 of 29

SUPERINTENDENT HEARING DISPOSITION RENDERED

DIN: 17B2994   NAME: BURRELL, AKO        HEARING DATE: __10/28/21__

INCIDENT DATE: 10/05/2021      TIME: 09:25 AM     TIER: 3

G. <u>PURPOSE(S) OF CONFINEMENT SANCTION IMPOSED (IF ANY) - SET FORTH ALL THAT APPLY:</u>

1. INCAPACITATION(Include the specific behaviors that posed a threat to the safety
               of staff or other inmates):

The actions witnessed on video caused the a disruption in the working of this facility taking several staff members away from their assigned tasks.

2. DETERRENCE:

Hopefully the Non-SHU sanctions and suspension of a part of the sanctions will deter you from future incidents.

3. FAIRNESS:

You were Pre hearing SHU Confined, the loss of privilege was imposed to impart fairness in the disciplinary system.

### SUPERINTENDENT HEARING DISPOSITION RENDERED

DIN: 17B2994  NAME: BURRELL, AKO                    HEARING DATE: 10/28/21

INCIDENT DATE: 10/05/2021          TIME: 09:25 AM          TIER: 3

H.  REASON(S) FOR A SHU CONFINEMENT SANCTION IMPOSED (IF ANY) WHERE INMATE IS UNDER
    PRIOR CONFINEMENT OR IN A SHU-ALTERNATIVE PROGRAM (Must have a guilty determination
    of an offense listed in section 1 and clearly articulated in section 2 and/or 3
    to impose a SHU confinement sanction on an inmate already serving a SHU sanction):

1.  THE INMATE IS FOUND GUILTY OF ONE OR MORE SERIOUS OFFENSES AS FOLLOWS:
___ PENAL LAW OFFENSE      ___ SEX OFFENSE          _X_ DIRECT ORDER (SERIOUS NATURE)
___ ASSAULT ON INMATE      ___ FORCIBLE TOUCHING    ___ ESCAPE ITEMS
___ ASSAULT ON STAFF       ___ STALKING             ___ POSSESSION EMPLOYEE PROPERTY
___ ASSAULT ON OTHER       ___ THREATS              ___ SMUGGLING
___ RIOTING                ___ BRIBERY/EXTORTION    ___ SEARCH/FRISK
___ ESCAPE                 ___ VIOLENT CONDUCT      ___ EXPLOSIVES
___ WEAPON                 ___ DEMONSTRATION        ___ ARSON
___ FIGHTING               ___ GANGS                ___ UNHYGIENIC ACT

2.  THE ACT(S) OF MISBEHAVIOR DEMONSTRATE A THREAT TO SAFETY AS FOLLOWS:

I/I was placed in SHU for creating two Demonstration charges. I/I
was removed from GP for the facilities safe and secure operation
and for not following orders.

3.  THE INMATE HAS ENGAGED IN THE FOLLOWING REPEATED ACTS OF DISRUPTIVE MISBEHAVIOR
    DESPITE PRIOR ALTERNATIVE INTERVENTIONS AS SET FORTH BELOW:

Refusing Orders X6

## SUPERINTENDENT HEARING DISPOSITION RENDERED

DIN: 17B2994  NAME: BURRELL, AKO                    HEARING DATE: 10/28/21

INCIDENT DATE: 10/05/2021        TIME: 09:25 AM      TIER: 3

I. __REASON(S) FOR INVOKING REMAINING SHU CONFINEMENT SANCTIONS SUSPENDED UPON AN
   INMATE'S SUCCESSFUL COMPLETION OF A SHU-ALTERNATIVE PROGRAM__ (Must have a guilty
   determination of an offense listed in section 1 and clearly articulated in
   section 2 to impose the SUSPENDED SHU confinement sanction after successful
   completion of a SHU-alternative program):

1. THE INMATE COMMITTED A SERIOUS ACT OF MISBEHAVIOR AS SET FORTH BELOW:

   ___ PENAL LAW OFFENSE      ___ SEX OFFENSE           ___ DIRECT ORDER (SERIOUS NATURE)
   ___ ASSAULT ON INMATE      ___ FORCIBLE TOUCHING     ___ ESCAPE ITEMS
   ___ ASSAULT ON STAFF       ___ STALKING              ___ POSSESSION EMPLOYEE PROPERTY
   ___ ASSAULT ON OTHER       ___ THREATS               ___ SMUGGLING
   ___ RIOTING                ___ BRIBERY/EXTORTION     ___ SEARCH/FRISK
   ___ ESCAPE                 ___ VIOLENT CONDUCT       ___ EXPLOSIVES
   ___ WEAPON                 ___ DEMONSTRATION         ___ ARSON
   ___ FIGHTING               ___ GANGS                 ___ UNHYGIENIC ACT

2. THE INMATE COMMITTED THE SAME OR SIMILAR VIOLATION AS THAT LEADING TO THE
   SUSPENDED SANCTION AS SET FORTH BELOW:

   _____

   _____

   _____

   _____

J. __SPECIAL INSTRUCTION ON VISITATION OR CORRESPONDENCE RESTRICTIONS, REFERRALS OR
   SPECIAL EVENT LOSS:__

   _____

   _____

   _____

   _____

   _____

------------------------------------------------------------------------------------

YOU HAVE THE RIGHT TO APPEAL THIS TIER III DISPOSITION BY SENDING YOUR APPEAL TO THE
COMMISSIONER'S OFFICE WITHIN 30 DAYS OF YOUR RECEIPT OF SUCH DISPOSITION:

I HAVE RECEIVED A COPY OF THIS HEARING DISPOSITION DATED: __10/28/21__

_W. Leclair_ , _Unable to Sign_ , _10/28/21 @ 1:30pm_

HEARING OFFICER SIGNATURE  INMATE SIGNATURE        DATE & TIME RECEIVED


***SUCCESSFUL PRINT COMPLETION***

# Exhibit



C



### NEW YORK STATE

## Corrections and Community Supervision

**KATHY HOCHUL**
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

### MEMORANDUM

**TO:**      Inmate _A. Burrell_____, DIN 17B2994__ Housing Location  SH-7

**FROM:**   Inmate Grievance Program Supervisor

**DATE:**   10/15/21

**SUBJ:**   Grievance Complaint Alleging Sexual Abuse or Sexual Harassment

---

In accordance with Directive #4040 § 701.3 (i), any inmate grievance complaint filed alleging sexual abuse or sexual harassment (PREA complaint) shall immediately be reported by the IGP Supervisor to the Watch Commander for further handling in accordance with Department policies. The grievance shall be deemed exhausted upon filing for Prison Litigation Reform Act (PLRA) purposes. If the grievance does not set forth any additional timely matters that require a response, the grievance shall be closed.

Your grievance # CL-0881-21, with a date of 10/12/21, was forwarded to the Watch Commander in accordance with Directive #4040 § 701.3 (i) and the Department's Sexual Abuse and Sexual Harassment Reporting and Investigation Policies.

☐     Your grievance contains only allegations of sexual abuse or sexual harassment. Accordingly, your grievance is deemed exhausted and has been closed. You will not receive a response to this complaint through the Inmate Grievance Program mechanism.

☒     Your grievance contains allegations of sexual abuse or sexual harassment as well as additional timely matters unrelated to sexual abuse or sexual harassment. Your complaint will be treated as two separate grievances. The sexual abuse/sexual harassment allegations have been reported to the facility Watch Commander in accordance with Department policy. The complaints about timely matters unrelated to the sexual abuse or sexual harassment allegations will be treated as a separate grievance logged as # CL-0882-21 and will be processed in accordance with Directive #4040. You will not receive a response to your sexual abuse/sexual harassment complaint through the Inmate Grievance Program mechanism.

cc:  SA/SH Grievance # CL-0881-21 file